**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-cv-24441-AMC**

K3 ENTERPRISES, INC.,
a Florida Corporation*,*

                Plaintiff,

v.

LUBA SASOWSKI, an individual,
SASOWSKI WAX HAIR REMOVAL BAR, LTD.,
d/b/a HAIR REMOVAL BAR, a Vancouver, BC
Company; WAX HAIR REMOVAL BAR, LLC., a
Nevada Domestic Limited Liability Company; and
WAXPERT HOLDINGS, LLC, a Nevada Limited
Liability Company, and NO. 5 DISTRIBUTING, INC.,
a Nevada Domestic Corporation,

                Defendants.

_____/


**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**
**<u>PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND 12(b)(6)</u>**

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................. 1

II. LEGAL STANDARDS ........................................................................................................ 2

III. FACTUAL ALLEGATIONS ............................................................................................. 3

    A. K3 and Sasowski Wax Hair Removal Bar, Ltd. Execute the Distributor Agreement........... 3

    B. The Amended Complaint Alleges Other Unexecuted Agreements....................................... 4

    C. The Parties Terminate the Distributor Agreement. ............................................................. 5

    D. K3's (Mis)characterization of the Defendant Entities......................................................... 5

    E. The Amended Complaint Barely Mentions the Remaining Defendants. .............................. 6

    F. K3's Claims........................................................................................................................ 6

IV. LEGAL ARGUMENT........................................................................................................ 7

    A. The Court Lacks Personal Jurisdiction Over Certain Defendants........................................ 7

    B. The Amended Complaint's Allegations Are Insufficient to Peirce the Corporate Veil. ....... 10

    C. K3 Fails to Allege a Breach of Contract............................................................................. 11

    D. K3 Does Not Allege a Uniform Trade Secrets Act Violation. ............................................ 13

        1. K3 fails to properly plead a trade secret. ...................................................................... 14

        2. FUTSA bars all other claims except for breach of contract. .......................................... 15

    E. K3 Admits It Cannot Plead a Tortious-Interference Claim. ................................................ 16

    F. Ms. Sasowski Did Not Owe K3 Any Fiduciary Duty.......................................................... 17

    G. K3's Civil Conspiracy Claim Has No Factual Allegations.................................................. 19

    H. Given the Distributor Agreement, K3 Cannot Allege Unjust Enrichment............................ 20

V. CONCLUSION.................................................................................................................... 20

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ WWW.GSGPA.COM

# I. Introduction

This is Plaintiff K3 Enterprises, Inc.'s second attempt at pleading viable claims for relief in this lawsuit, as well as its second effort at pleading personal jurisdiction in accordance with binding Eleventh Circuit precedent and Florida law. Plaintiff all but abandoned its original Complaint [ECF No. 1] after reading the briefs on the prior motion to dismiss and, presumably, reviewing the applicable law [ECF Nos. 32, 36, and 45]. Even after missing two separate deadlines to amend [ECF Nos. 8, 28], Plaintiff implored the Court to allow the filing of an Amended Complaint so it could plead additional detail and facts to salvage this case [ECF Nos. 51, 53]. Although the Court granted the request [ECF No. 61] and the Amended Complaint became the operative pleading [ECF No. 62], Plaintiff did little if anything to help its cause.

Indeed, this latest pleading remains hopelessly confused and flawed, while curing almost none of the basic pleading deficiencies that doomed the original Complaint. Although it haphazardly asserts nine different claims against five separate Defendants, the Amended Complaint does not make any effort to distinguish between the various Defendants, let alone tether a particular Defendant's conduct to any of the various claims. Not only does this run afoul of clear law with respect to pleading personal jurisdiction, it also renders the entire pleading a nonsensical mess with respect to the claims for relief.

The examples are glaring. The first three counts are breach of contract claims against all five Defendants, *yet four of the five Defendants are not even parties to a contract with Plaintiff.*[1]

---

[1] Plaintiff attached the only signed, valid contract in this case to its original Complaint, ECF No. 1, but did not attach it to the Amended Complaint. For the Court's convenience, it is attached as Exhibit 1 to this motion. The Amended Complaint also makes a passing reference to "an additional distribution agreement" and references another document attached to the original Complaint, ECF No. 62 ¶ 16, but that document is plainly not signed by anyone. Again, that document was not attached to the Amended Complaint, but it is attached here as Exhibit 2. The Court may consider both documents on this motion. *See* [Am. Compl. ¶¶ 13, 16] (incorporating exhibits by reference

There is a tortious interference claim, yet the first paragraph of that claim (¶ 76) professes total ignorance as to any business or contractual relationships that could ostensibly support the claim. There is also a trade secrets claim that identifies no trade secrets, a breach of fiduciary duty claim with no actual fiduciary duty, and even an injunctive relief claim where no such claim even exists.

Simply put, the Amended Complaint is littered with conclusory and implausible statements, and makes absolutely no effort to attribute any specific facts or detail (much less, any wrongdoing) to any particular Defendant. And even aside from the glaring pleading deficiencies that make the Amended Complaint almost impossible to follow, the claims themselves are subject to dismissal as a matter of black-letter law. As explained in greater detail below, this motion should be granted for two reasons. First, the Amended Complaint fails to allege facts to show personal jurisdiction over Defendants Wax Hair Removal, Waxpert Holdings, and No. 5 Distributing. Second, the Amended Complaint fails to state any claims upon which relief can be granted.

## II. LEGAL STANDARDS

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Importantly, the allegations must be factual and cannot be conclusory. *See id.* at 1275 & n.16. A "federal court sitting in diversity undertakes a two-step inquiry to determine whether personal jurisdiction exists." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018). "First, the exercise of jurisdiction must be appropriate under the forum state's long-arm statute." *Id.* Second, exercises of jurisdiction authorized by Florida law "must comport with due process." *Id.*

_____

into Amended Complaint); *Maletta v. Woodle*, No. 2:20-cv-1004, 2021 WL 1894023, at *1 n.1 (M.D. Fla. May 11, 2021) (considering exhibits attached to initial complaint as incorporated by reference into amended complaint).

On a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action . . . do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When a complaint attaches exhibits, federal courts must credit the attachments, even when the exhibits contradict that complaint's allegations. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

### III. FACTUAL ALLEGATIONS

The Amended Complaint's allegations show the following.

**A. K3 and Sasowski Wax Hair Removal Bar, Ltd. Execute the Distributor Agreement.**

K3 is a Florida company that sells skincare products under the name of South Beach Skin Solutions. [Am. Compl. ¶ 13] On November 5, 2010, K3 executed the "Distributor Agreement" with one of the Defendants, Sasowski Wax Hair Removal Bar, Ltd. ("Sasowski Wax"), a Canadian corporation with its principal place of business in Vancouver. [Compl. Ex. A at 7] Under the Distributor Agreement, Sasowski Wax agreed to act as "exclusive" distributor for K3's skincare products. [Compl. Ex. A § 1] Though the Amended Complaint alleges that all of the Defendants were bound by the Distributor Agreement, only K3 and Sasowski Wax signed the Distributor Agreement. [Am. Compl. ¶ 12(g)] In fact, the Distributor Agreement defines the parties as K3 (as the "Manufacturer") and Sasowski Wax (as the "Distributor"). [Compl. Ex. A at 1] While another defendant—Luba Sasowski—signed the Distributor Agreement, she signed it on behalf of Sasowski Wax as its "owner." [Compl. Ex. A at 7]

The Distributor Agreement was not a worldwide agreement. Instead, Sasowski Wax became K3's exclusive distributor for only the "Territory," which the Distributor Agreement defined as "British Columbia—Canada." [Compl. Ex. A § 3] The Distributor Agreement prevented

Sasowski Wax from selling products that competed with K3's products during its term and "for a period of two (2) years afterwards." [Compl. Ex. A § 4] Nonetheless, this restriction applied only to British Columbia, Canada. [Compl. Ex. A § 4]

The Distributor Agreement also had a confidentiality provision, which prevented Sasowski Wax from revealing information marked confidential by K3 for five years after the Distributor Agreement's termination, but it requires the Manufacturer to advise Distributor of any particular information that is confidential. [Compl. Ex. A § 19] Nowhere does the Amended Complaint allege that K3 ever advised Sasowski Wax that any information it provided was confidential.

The Distributor Agreement also acknowledged that Sasowski Wax's agents or employees should not or could not, under any "circumstances, be deemed employees, agents or representatives of" K3. [Compl. Ex. A § 15] It required that Florida state law apply to any interpretation of the Distributor Agreement. [Compl. Ex. A § 24] It required that notices be provided. [Compl. Ex. A § 24] And it barred any modification unless explicitly made by the parties in writing. [Compl. Ex. A § 21]

## B. The Amended Complaint Alleges Other Unexecuted Agreements.

The Amended Complaint alleges that on June 15, 2012, K3 and Ms. Sasowski executed another agreement that "expanded the territory to include all of Canada." [Am. Compl. ¶ 16] It is unclear whether the Amended Complaint alleges Ms. Sasowski individually executed a new agreement with K3 or alleges that Ms. Sasowski (on Sasowski Wax's behalf) and K3 modified the Distributor Agreement through this new agreement. In any event, the Amended Complaint incorporates by reference the purported new agreement, which lists Sasowski Wax and K3 as the hypothetical signatories. [Am. Compl. ¶ 16] More importantly, no one signed this new agreement, so it was never "duly executed by both parties." [Compl. Ex. B at 7]

4

The Amended Complaint also alleges that at some undefined time, Ms. Sasowski agreed to distribute K3's products throughout the United States. [Am. Compl. ¶ 17] The Amended Complaint does not attach this supposed agreement anywhere. Nor does it make any effort to describe any of the terms of this never-before-seen agreement, let alone explain how those terms were breached by any of the Defendants.

## C. The Parties Terminate the Distributor Agreement.

On December 3, 2019, the Distributor Agreement was terminated. [Am. Compl. ¶ 18] The Amended Complaint alleges Defendants interfered with K3's potential customers, though K3 admits that it cannot yet identify the "business and contractual relationships" supposedly interfered with until "litigation progresses." [Am. Compl. ¶ 76] It also says Defendants misappropriated K3's trade secrets but provides one reasonably particular example (confusingly within its breach-of-contract claim): the sourcing of an "LED wand sourced" from China "via Alibaba." [Am. Compl. ¶ 37] Beyond that, the Amended Complaint offers abstract vagaries about which of K3's "trade secrets" were stolen. According to K3, Ms. Sasowski (who was not a signatory to the Distributor Agreement) stole generic categories of information such as "activities, services, products." [Am. Compl. ¶ 48(a)] Except for the Alibaba tidbit, untethered to the factual allegations supporting the misappropriation claim, nowhere does the Amended Complaint allege *what* activities, services, products, or other items Ms. Sasowski supposedly stole.

## D. K3's (Mis)characterization of the Defendant Entities.

The Amended Complaint says any individuality or separateness among the Defendants has ceased to exist, and the entities are the alter egos of Ms. Sasowski or vice versa. And, it adds, K3 was unaware of which corporate hat Ms. Sasowski wore, so all Defendants are liable. The Amended Complaint pivots to showing how these entities were used for improper purposes by

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ WWW.GSGPA.COM

generally attributing breach-of-contract misconduct to the "WHRB Defendants" or the "Sasowski Entities" collectively; it never differentiates between the different entities. For these allegations, the Amended Complaint's introduction states "all of the defendants are Sasowski alter-egos and/or Sasowski is the alter-ego of the Sasowski entities" and includes the phrase "and/or" impliedly acknowledging that K3 is unsure what pierce veiling theory it is invoking or where these alleged alto-ego statuses arose.

**E. The Amended Complaint Barely Mentions the Remaining Defendants.**

The Amended Complaint incorporates one contract executed by Sasowski Wax, but it makes almost no specific allegations about the remaining Defendants. The Amended Complaint describes Sasowski Wax, Wax Hair Removal Bar, LLC ("Wax Hair Removal"), and Waxpert Holdings, LLC ("Waxpert Holdings") as Ms. Sasowski's alter egos and refers to these entities as the "WHRB Defendants." [Am. Compl. ¶¶ 3–5, 8] The Amended Complaint also adds No. 5 Distributing, Inc. ("No. 5 Distributing") and simply refers to all entities as the "Sasowski Entities." [Am. Compl. ¶¶ 6–7], but makes scant allegations as to the entity Defendants' role in anything.

**F. K3's Claims.**

K3 asserts nine separate counts against all Defendants. Counts I through III assert claims for breach of the non-compete clause, the confidentiality clause, and trademark clause, all of which are directed at the "Agreement," which the Amended Complaint defines as the Distributor Agreement. [Am. Compl. ¶ 13] Counts IV and V allege violations of the Florida Uniform Trade Secrets Act. Count VI is for tortious interference with business relationships. Count VII alleges a conspiracy to misappropriate trade secrets and tortiously interfere. Count VIII is for unjust enrichment. Count IX is for breach of fiduciary duty against Ms. Sasowski.

6

## IV. LEGAL ARGUMENT

The Amended Complaint is a wholesale mess. Initially, it fails at the threshold to demonstrate personal jurisdiction over each Defendant individually. Substantively, the Amended Complaint fails at the most basic of tasks, failing miserably to plead the most basic aspects of the claims and contravening controlling law that compels dismissal.

### A. The Court Lacks Personal Jurisdiction Over Certain Defendants.

K3 says this Court can exercise either specific or general jurisdiction over Defendants. Along the way to that conclusion, K3 lumps Wax Hair Removal, Waxpert Holdings, and No. 5 Distributing into two collective nouns and proclaims that all Defendants (again, collectively) have the same contacts with Florida. K3, however, fails to specifically isolate the jurisdictional allegations among the different entities and makes no particularized allegations about why the exercise of personal jurisdiction over these Defendants is constitutional. The Amended Complaint's omissions are especially glaring considering K3 was not only afforded an extended opportunity to conduct jurisdictional discovery but was also apprised of Defendants' personal jurisdiction objections before its filing.

The Amended Complaint claims the Defendants, as a group, operated a business, participated in a business venture, committed a tortious act, and breached a contract in Florida, subjecting them to Florida's long-arm statute. To this point, the Amended Complaint says nothing about any actions or conduct that would bring Wax Hair Removal, Waxpert Holdings, and No. 5 Distributing within the ambit of Florida's long-arm statute.

Take, for instance, Waxpert Holdings, a dissolved company. Nowhere does the Amended Complaint provide any specific allegations to establish that Waxpert Holdings operated a business, participated in a business venture, committed a tortious act, or breached a contract in Florida.

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ WWW.GSGPA.COM

Similarly, the Amended Complaint says precious little about Wax Hair Removal and No. 5 Distributing. The Amended Complaint's lack of specificity in many (if not all) of the allegations and its assumption that all Defendants can be treated as a group for jurisdictional purposes requires dismissal of these Defendants. *See Borislow v. Canaccord Genuity Grp. Inc.*, No. 14-80134-Civ, 2014 WL 12580259, at *5 (S.D. Fla. June 27, 2014) (concluding the complaint failed to present a prima facie case of personal jurisdiction over a defendant where it indiscriminately lumped the defendants together without detailing what actions that defendant allegedly took itself); *Flava Works, Inc. v. Roje on Holiday Inc.*, No. 1:10-cv-23834, 2012 WL 1535684, at *5 (S.D. Fla. May 1, 2012) (explaining a plaintiff cannot "indiscriminately lump[]" all of the defendants together to establish personal jurisdiction: a plaintiff "must establish personal jurisdiction over each individual Defendant based on that Defendant's activities in and contacts with Florida.").

In any event, Florida's long-arm statute does not confer personal jurisdiction over these Defendants under: (i) FLA. STAT. § 48.193(1)(a)1, which provides for personal jurisdiction over a defendant where any claim arises from a defendant's "[o]perating, conducting, engaging in, or carrying on a business or business venture" in Florida; (ii) FLA. STAT. § 48.193(1)(a)2, which provides for personal jurisdiction over a defendant who "commit[s] a tortious act within" Florida; or (iii) FLA. STAT. § 48.193(1)(a)7, which provides for personal jurisdiction over any person "who personally or through an agent" breaches "a contract in" Florida "by failing to perform acts required by the contract to be performed" in Florida.[2]

---

[2] K3 also invokes section 48.193(2), Florida Statutes, which provides Florida courts with general jurisdiction over a defendant. A court may exercise general jurisdiction when the defendant is "essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Barring exceptional cases, a defendant is "at home" in her domicile or its place of incorporation and principal place of business. *See Goodyear*, 564 U.S. at 924. The Amended Complaint's allegations—that Wax Hair Removal, Waxpert Holdings, and No. 5 Distributing are either Nevada

First, section 48.193(1)(a)1. K3's group allegations fall short of establishing personal jurisdiction over Wax Hair Removal, Waxpert Holdings, and No. 5 Distributing, as K3 does not describe the nature of each Defendant's business conducted in Florida, each Defendant's business venture, or how such business or venture gave rise to its claims. Second, section 48.193(1)(a)2. The Amended Complaint never mentions that these specific non-resident Defendants performed tortious conduct in Florida. Third, section 48.193(1)(a)7. A review of the Distributor Agreement— an agreement that Wax Hair Removal, Waxpert Holdings, and No. 5 Distributing never signed— reveals there are no acts that are required by these Defendants to be performed in Florida.[3]

Even if this Court finds K3 satisfies the long-arm statute, exercising specific jurisdiction over Defendants offends due process. K3 seems to believe that because a non-resident individual executed a Distributor Agreement on behalf of a non-resident corporation, and because the Distributor Agreement was (allegedly) breached, the other non-resident entities—Wax Hair Removal, Waxpert Holdings, and No. 5 Distributing—are subject to personal jurisdiction via the non-resident corporation's breach and contacts with Florida. Without any allegations establishing personal jurisdictional over each Defendant entity based on that Defendant's activities in and contacts with Florida, K3's articulated jurisdictional theory requires too great a leap in logic for this Court to exercise personal jurisdiction over Wax Hair Removal, Waxpert Holdings, and No. 5 Distributing. Said differently, it is impossible to conclude that these Defendants purposefully availed themselves of the privilege of conducting business in Florida, that any purposeful

---

limited liability companies or a Nevada corporation with principal places of business in Nevada and no business dealings in Florida—establish that general jurisdiction does not apply.

[3] Because K3's group-pleading obfuscates the ability to evaluate each Defendant separately, and because K3 fails to plead a prima facie case of specific jurisdiction under Florida's long-arm statute, the burden does not shift to Defendants to disprove personal jurisdiction. *See Ivanovic v. Overseas Mgmt. Co.*, No. 11-80726-Civ, 2011 WL 5508824, at *2–3 (S.D. Fla. Nov. 9, 2011).

9

availment gave rise to K3's claims, or that personal jurisdiction here comports with fair play or substantial justice.

**B. The Amended Complaint's Allegations Are Insufficient to Peirce the Corporate Veil.**

Unable to allege that Wax Hair Removal, Waxpert Holdings, and No. 5 Distributing did anything wrong, the Amended Complaint seeks to impute liability upon these Defendants by piercing the corporate veil. The Amended Complaint, however, makes no showing that these entities were used for an improper or fraudulent purpose—an indispensable component of K3's veil piercing theory.

Under Florida law, "to disregard" the corporate form and hold an entity's "owners liable," a litigant must allege and prove that (1) the owners "dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact non-existent" and the owners "were in fact alter egos of the corporation"; (2) the "corporate form must have been used fraudulently or for an improper purpose"; and (3) "the fraudulent or improper use of the corporate form caused injury to" that litigant. *Molinas Valle del Cibao v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011). Improper conduct occurs where the corporation is "a mere device or sham to accomplish some ulterior purpose . . . or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998). "Notably, evidence demonstrating an absence of corporate formalities, lack of equity capital, proof of domination and control, and that a corporation was used as vehicle for personal interests is not 'the correct standard' to pierce the corporate veil. The key, therefore, is deliberate improper conduct." *Johnson v. New Destiny Christian Ctr. Church, Inc.*, 303 F. Supp. 3d 1282, 1286 (M.D. Fla. 2018) (citation omitted).

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ www.gsgpa.com

K3 seems to suspect Ms. Sasowski used these companies to steal K3's (unalleged) concepts and trade secrets, manufacture a competing product, and sell that product on the market, all of which, according to the Amended Complaint, are direct violations of the Distributor Agreement. [Am. Compl. ¶ 28]. Put differently, the Amended Complaint alleges Ms. Sasowski formed or used these entities to breach the Distributor Agreement. Yet, causing a breach of contract is not an improper purpose that would justify piercing the corporate veil. *See, e.g.*, *WH Smith, PLC v. Benages & Assocs., Inc.*, 51 So. 3d 577, 583 (Fla. Dist. Ct. App. 2010) (per curiam); *Action Nissan, Inc. v. Hyundai Motor Am.*, No. 6:18-cv-380, 2019 WL 12043580, at *3 (M.D. Fla. Aug. 2, 2019).

Aside from the breach-of-contract allegations, the Amended Complaint also states that Ms. Sasowski may utilize these entities to confuse and avoid creditors if (and only if) a judgment is entered against her. [Am. Compl. ¶ 28(a)]. K3's supposition of Ms. Sasowski's future motive is speculation that does not constitute improper conduct necessary to pierce the corporate veil. Nor can K3 salvage its improper purpose allegations by selectively quoting excerpts of Ms. Sasowski's deposition transcript—a deposition in which she testified in her individual capacity only. K3's far-fetched (and completely frivolous) veil piercing theory must be rejected.

**C. K3 Fails to Allege a Breach of Contract.**

This Court should dismiss K3's breach-of-contract claims (Counts I through III). The "elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." *JJ Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla. Dist. Ct. App. 2003) (per curiam). A valid contract exists only if there was an offer, an acceptance of that offer, and an exchange of consideration: "[N]o person or entity is bound by a contract absent the essential elements of offer and acceptance (its agreement to be bound to the contract terms), supported by

consideration." *Leesburg Cmty. Cancer Ctr. v. Leesburg Reg'l Med. Ctr., Inc.*, 972 So. 2d 203, 206 (Fla. Dist. Ct. App. 2007). Here, K3 does not allege the first two elements.

After all, the only valid agreement in the entire Amended Complaint is the Distributor Agreement, which Ms. Sasowski signed on behalf of Sasowski Wax.[4] [Compl. Ex. A at 7] Thus, to be clear, according to the plain language of the Distributor Agreement itself, the only parties to that contract are K3 and Sasowski Wax. Accordingly, Ms. Sasowski is not a party or signatory to the Distributor Agreement. And yet the Amended Complaint's sole allegations are that *Ms. Sasowski* breached the Distributor Agreement. [Am. Compl. ¶¶ 34, 39, 42] It is unclear—either in law or in the Amended Complaint—how a non-signatory to a contract can breach that contract.[5]

To make matters worse, K3 asks this Court to rewrite the contract, add meaning that is not present, and reach a result contrary to the intentions of the parties—again, those being only K3 and Sasowski Wax. It is elementary that courts may not "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Intervest Constr. of Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So. 3d 494, 497 (Fla. 2014). Contrary to K3's near-frivolous position, the Distributor Agreement "must be interpreted and enforced in accordance with its plain meaning." *CitiMortgage, Inc. v. Turner*, 172 So. 3d 502, 504 (Fla. Dist. Ct. App. 2015). It clearly

---

[4] An agent who signs a contract on behalf of her principal has not accepted to be bound by that contract's terms. "[T]he signature of a corporate officer placed under the name of the corporation and preceded by the word 'By' does not create personal liability." *Delta Air Lines, Inc. v. Wilson*, 210 So. 2d 761, 763 (Fla. Dist. Ct. App. 1968).

[5] To the extent the Amended Complaint is alleging some other contract that prohibited Defendants from competing, those allegations are foreclosed by Florida law, which states that a "court shall not enforce a restrictive covenant unless it is set forth in writing signed by the person against whom enforcement is sought." FLA. STAT. § 542.335(1)(a). To the extent the Amended Complaint is alleging that Ms. Sasowski somehow modified the Distributor Agreement to include herself as a signatory and to expand the territory to which that agreement applied, those allegations are foreclosed because any modification had to be in writing. *See Energy Smart Indus., LLC v. Morning Views Hotels—Beverly Hills, LLC*, 660 F. App'x 859, 863 (11th Cir. 2016) (per curiam).

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ www.gsgpa.com

states the Agreement is: "by and between K3 Enterprises, Inc. ('Manufacturer') and WAX Hair Removal Bar, a business located at 2805 West 16th Avenue, Vancouver BC V6K 3C5, Canada ('Distributor')." [Compl. Ex. A at 1] Ms. Sasowski, Wax Hair Removal, Waxpert Holdings, and No. 5 Distributing are non-parties to the Distributor Agreement and cannot be held liable.[6] *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); FLA. STAT. § 542.335(1)(a).

What's more, K3 does not undertake the perfunctory task of alleging that Ms. Sasowski's breaches were *material* breaches—an element of the claims. *See JJ Gumberg*, 847 So. 2d at 1049. And, despite having the opportunity to allege conditions precedent generally, K3 does not even meet this minimal standard, even though the Distributor Agreement has conditions precedent, like providing notice and classifying the provided information as confidential. *See* FED. R. CIV. P. 9(c).

**D. K3 Does Not Allege a Uniform Trade Secrets Act Violation.**

In Counts IV and V,[7] K3 seeks to impose liability on Defendants under section 688.001 to .009 of the Florida Statutes, known as the Florida Uniform Trade Secrets Act ("FUTSA"). Under FUTSA, a plaintiff may recover damages (or seek an injunction) for "misappropriation," including actual loss and unjust enrichment. *See* FLA. STAT. §§ 688.003–.004. K3 fails to state a claim under FUTSA.[8] In the alternative, to the extent this claim survives, FUTSA bars K3's claims for tortious interference, unjust enrichment, civil conspiracy, and breach of fiduciary duty.

---

[6] Count I's theory is especially troublesome given the fact Defendants are not signatories to the Agreement. *See* FLA. STAT. § 542.335(1)(a) (explicitly disallowing such claim).

[7] In Count IV, K3 seeks damages and injunctive relief for the alleged violation of FUTSA, while in Count V it (again) seeks injunctive relief for the same violation. Injunctive relief, however, "is a remedy and is not properly brought as an independent, substantive claim." *XL Funding, Inc. v. Griggs*, No. 20-24782-Civ, 2021 WL 1976028, at *8 (S.D. Fla. Apr. 26, 2021).

[8] K3 also says Defendants violated the Lanham Act, 15 U.S.C. § 1051. [Am. Compl. ¶ 54] K3's citation to the Lanham Act does not state a claim because it is randomly inserted within an unrelated count with no factual allegations supporting such claim.

**1. K3 fails to properly plead a trade secret.**

To properly plead misappropriation under this statute, a plaintiff must allege it "(1) possessed secret information and took reasonable steps to protect its secrecy, and (2) the secret they possessed was misappropriated," as that term is defined in the statute. *See VVIG, Inc. v. Alvarez*, No. 18-cv-23109, 2019 WL 5063441, at *3 (S.D. Fla. Oct. 9, 2019). A plaintiff "is required to identify with reasonable particularity the trade secrets at issue before proceeding with discovery." *Id.* (quoting *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016)). A plaintiff must do "more than simply identify broad categories of information, such as financial and technical data." *Id.* (internal quotation marks omitted). Here, K3 does what courts have held it should never do—identify broad categories of information without particularity.

A review of the Amended Complaint shows that K3 does not offer any particularity but, instead, avers that Defendants misappropriated every plan, service, product, or idea K3 ever had. Defendants supposedly misappropriated "Plaintiff's activities, services, products," and "computer programs and systems," but the Amended Complaint never specifies *which* activities, services, or products. [Am. Compl. ¶ 48(a)] Defendants also misappropriated "trade secrets"—a tautology that offers nothing—"inventions," and "discoveries." [Am. Compl. ¶ 48(a)] Defendants also apparently misappropriated "[i]nformation relating to: research, development, inventions, work performed or to be performed for customers," and "contractual agreements," though the Amended Complaint never offers to explain what information or how it related to these topics. [Am. Compl. ¶ 48(b)] Candidly, the Amended Complaint drones on with abstract, nebulous trade secrets supposedly misappropriated for a full page without offering a tangible trade secret. [Am. Compl. ¶ 48(a)–(e)]

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ www.gsgpa.com

This is simply not enough to properly plead a violation of FUTSA.[9] *See VVIG, Inc.*, 2019 WL 5063441, at *3–4.

Equally important, though, K3 has not alleged that it undertook steps to maintain this information a secret. In fact, the Distributor Agreement contained a confidentiality provision, but K3 had to invoke it by advising Sasowski Wax when K3 considered information confidential, a process K3 never undertook and certainly never alleges it undertook. [Compl. Ex. A § 19] And, from there, K3 decided to provide Ms. Sasowski distributorship rights throughout the United States without so much as a written agreement, let alone a confidentiality clause or safeguard for its supposed trade secrets. K3's failure to mark its information as "confidential," alone, defeats K3's claim. *See Cubin Transp. Sys., Inc. v. Miami-Dade Cnty.*, 899 So. 2d 453, 454 (Fla. Dist. Ct. App. 2005).

**2. FUTSA bars all other claims except for breach of contract.**

Although in Counts VI, VII, VIII, and IX K3 seeks to allege claims for tortious interference, civil conspiracy, unjust enrichment, and breach of fiduciary duty, those claims are preempted by FUTSA. FUTSA "displace[s] conflicting tort, restitutory, and other law" in Florida "providing civil remedies" with the exception of "[c]ontractual remedies" or civil remedies "that are not based upon misappropriation of a trade secret" or criminal remedies. FLA. STAT. § 688.008.

---

[9] As best Defendants can tell, the sole allegation of actual trade secrets in the Amended Complaint comes from paragraph 37 in an unrelated count, where the Amended Complaint alleges Defendants had access to broad categories of information, including K3's packaging, labelling, and ability to source LED lights through Alibaba. [Am. Compl. ¶ 37] But, as noted, under FUTSA, something is a "trade secret" only if it is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." FLA. STAT. § 688.002(4)(b). And it is impossible to imagine how packaging and labelling (which are obvious to anyone buying K3's product) or its sourcing through a public website that sells to everyone and anyone can meet this definition. *See Se. Mech. Servs., Inc. v. Brody*, No. 08-cv-1151, 2008 WL 4613046, at *10 (M.D. Fla. Oct. 15, 2008) ("Information that is generally known or readily accessible to third parties does not constitute a trade secret under Florida law.").

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ www.gsgpa.com

This "section apparently preempts all claims based on misappropriation of trade secrets." *Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1335 (S.D. Fla. 2002). "To determine whether allegations of trade-secret misappropriation preempt a plaintiff from sufficiently pleading a separate, but related tort, the Court must evaluate whether allegations of trade secret misappropriation alone comprise the underlying wrong; if so, the cause of action is barred by section 688.008." *Fla. Beauty Flora Inc. v. Pro Intermodal L.L.C.*, No. 20-20966-Civ, 2021 WL 1945821, at *9 (S.D. Fla. May 14, 2021). "Thus, a plaintiff's separate tort claim is preempted by FUTSA if there is no material distinction between the plaintiff's FUTSA claim and the other allegation." *Id.*

Here, K3's claims for tortious interference, civil conspiracy, unjust enrichment, and breach of fiduciary duty are based on the misappropriation of the alleged trade secrets. A cursory review of the conclusory allegations reveals these claims are simply reframed misappropriation-of-trade-secret claims and not materially different from K3's FUTSA claim. [Am. Compl. ¶¶ 78, 83, 88, 94]. This Court must dismiss Counts VI, VII, VIII, and IX with prejudice.

**E. K3 Admits It Cannot Plead a Tortious-Interference Claim.**

In Count VI, the Amended Complaint attempts to allege a claim for tortious interference with business relationships. In paragraph 76, however, the Amended Complaint admits that it has no actual factual allegations to support its claim.

To plead a claim for tortious interference, a plaintiff must allege "(1) the existence of a business relationship between the plaintiff and a third person . . . under which the plaintiff has legal rights," (2) "the defendant's knowledge of the relationship," (3) "an intentional and unjustified interference with the relationship by the defendant which induces or otherwise causes the third person not to perform," and (4) "damage to the plaintiff resulting from the third person's

16

failure to perform." *DNA Sports Performance Lab, Inc. v. Club Atlantis Condo. Ass'n*, 219 So. 3d 107, 110 (Fla. Dist. Ct. App. 2017). Importantly, the first element requires allegations that the "business relationship . . . afford[s] the plaintiff existing or prospective legal or contractual rights." *Register v. Pierce*, 530 So. 2d 990, 993 (Fla. Dist. Ct. App. 1988). And, of course, under *Twombly* and *Iqbal*, K3 must allege *facts* that support the existing or prospective legal or contractual rights.

And yet K3 does not even recite the threadbare allegations of the elements. To the contrary, K3 *admits* in its allegations that it does not know of any existing or prospective legal or contractual rights that Defendants interfered with. In its Amended Complaint, K3 alleges that it will be able to identify these business relationships "as litigation progresses." [Am. Compl. ¶ 76] But K3's theory—that it can uncover the facts through discovery—turns civil litigation on its head. In civil cases, "a party is not entitled to discovery" until after it "has not only filed a complaint, but a well-pleaded one." *United States v. Cuya*, 964 F.3d 969, 973 (11th Cir. 2020). Because the Amended Complaint fails to allege the appropriate elements or facts to support the claim and because the Amended Complaint assumes that it can uncover facts in discovery without appropriately pleading its claims, dismissal is required.[10]

**F. Ms. Sasowski Did Not Owe K3 Any Fiduciary Duty.**

In Count IX, K3 alleges Ms. Sasowski, personally and individually, owed it fiduciary duties and that Ms. Sasowski breached those duties by using K3's trade secrets. As noted above, this claim is barred by the FUTSA. But, in any event, the Amended Complaint's allegations underscore

---

[10] To the extent K3 relies on the allegation Defendants interfered with "potential customers, distributors, and wholesalers" and not its demand for fact discovery, the claim still fails. [Am. Compl. ¶ 77] Certainly, "[i]nterference with the expectation of obtaining business or with a relationship with the community in general is an insufficient basis for tortious-interference claim." *DJ Lincoln Enters., Inc. v. Google, LLC*, No. 2:20-cv-14159, 2021 WL 184527, at *7 (S.D. Fla. Jan. 19, 2021).

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ www.gsgpa.com

that Ms. Sasowski owed K3 no fiduciary duty whatsoever.

"The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v Eaker*, 837 So. 2d 348, 353 (Fla. 2002). A fiduciary relationship arises when "confidence is reposed by one party and trust accepted by the other." *Bringham v. Bringham*, 11 So. 3d 374, 387 (Fla. Dist. Ct. App. 2009). Moreover, a plaintiff must allege *facts* that bring the fiduciary relationship from the speculative to the plausible. *See Twombly*, 550 U.S. at 570; *Catano v. Capuano*, No. 18-cv-20223, 2020 WL 639406, at *13 (S.D. Fla. Feb. 11, 2020) (dismissing claim based on fiduciary duty where allegations did not explain or define how trust reposed and accepted by parties). Here, the Amended Complaint utterly fails to do this.

To be sure, K3 alleges that Ms. Sasowski "was in a position where Plaintiff reposed trust and confidence" and that Ms. Sasowski "undertook such trust." [Am. Compl. ¶¶ 95–96] The only factual explanation given by the Amended Complaint is that this trust was offered and accepted through the Distributor Agreement. [Am. Compl. ¶ 95] And yet the Distributor Agreement squarely states that Ms. Sasowski (the owner and therefore agent of Sasowski Wax) could never be considered to be an agent, employee, or representative—i.e., the type of role that creates fiduciary obligations—for K3. [Compl. Ex. A § 15] And, by law, K3 could through contract limit or outright deny any agency or fiduciary relationship with Ms. Sasowski, which is precisely what was accomplished here. *See* RESTATEMENT (THIRD) OF AGENCY § 8.01 cmt. c.

Thus, other than the conclusory allegation that trust was offered and accepted through the Distributor Agreement, K3 does not assert any other facts supporting its claim that a fiduciary relationship existed. The entire dispute—as alleged in Count IX—relates to contractual obligations under the Distributor Agreement, negotiated at arm's length, and supposedly breached by (non-

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ www.gsgpa.com

party and non-signatory) Ms. Sasowski. These "facts" do not plausibly show that K3 and Ms. Sasowski enjoyed a fiduciary relationship.

**G. K3's Civil Conspiracy Claim Has No Factual Allegations.**

To plead a civil-conspiracy claim, a plaintiff must allege "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy," and "(d) damage to plaintiff as a result of the acts done under the conspiracy." *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997). A civil-conspiracy claim is a "vehicle for imputing the tortious acts of one coconspirator to another to establish joint and several liability." *Lorillard Tobacco Co. v. Alexander*, 123 So. 3d 67, 80 (Fla. Dist. Ct. App. 2013). Hence, a civil conspiracy claim cannot survive without a well-pleaded underlying tort. *See, e.g.*, *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007). And, as always, it is not enough to recite the *elements* of a civil-conspiracy claim, a plaintiff, rather, must "allege *facts* sufficient to maintain the claim[]." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009). And, here, K3 utterly fails to do any of this.

First, K3 does not properly allege an underlying wrong. All of its claims based on tortious conduct are improperly pleaded. Nor does it allege a single fact about Ms. Sasowski's purported agreement to conspire with Sasowski Wax, Wax Hair Removal, Waxpert Holdings, or No. 5 Distributing. The bare assertions Defendants agreed to act in concert are not enough to allege a conspiratorial agreement. Second, because Ms. Sasowski is supposedly an alter ego of Sasowski Wax, Wax Hair Removal, Waxpert Holdings, and No. 5 Distributing, it is impossible for them to conspire with each other. Florida law recognizes the obvious deficiency in alleging that agents and principals or alter egos somehow conspired with each other to commit a tort. For that reason, Florida courts bar plaintiffs from alleging that an agent conspired with a principal—which is what,

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ WWW.GSGPA.COM

in essence, K3 alleges here. *See Kurnow v. Abbott*, 114 So. 3d 1099, 1102 (Fla. Dist. Ct. App. 2013). For these two reasons, dismissal of the civil-conspiracy count is required.

**H. Given the Distributor Agreement, K3 Cannot Allege Unjust Enrichment.**

"A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained the benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012). Of course, a "plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Bestoso v. BBVA Compass Bank*, No. 17-cv-60884, 2017 WL 5634936, at *7 (S.D. Fla. June 25, 2017). Here, the Distributor Agreement is an express contract that concerns the subject matter at issue here and whose validity no one disputes. Accordingly, K3 cannot seek relief for unjust enrichment and is stuck seeking relief under the Distributor Agreement. *See id.* ("a claim of unjust enrichment may only be pleaded in the alternative where one of the parties asserts the contract governing the dispute is invalid.").

Even if K3 properly pleads its unjust enrichment claim in the alternative—which it does not—the Amended Complaint does not identify how the elements of unjust enrichment apply to each Defendant. Rather, K3 alleges Defendants "individually or in concert have misappropriated confidential, proprietary, and/or trade secrets information and merchandise belonging" to K3 and that K3 received no benefit from Defendants. [Am. Compl. ¶ 88]. Although this claim may recite the proper language, it is bereft of supporting facts and contains nothing more than unadorned, the defendants-unlawfully-harmed-me accusations.

### V. CONCLUSION

For these reasons, the motion to dismiss should be granted.

20

Dated: August 25, 2021                          Respectfully Submitted,

                                                */s/ Adam M. Schachter*
                                                ADAM M. SCHACHTER
                                                Florida Bar No. 647101
                                                aschachter@gsgpa.com
                                                ANDREW T. FIGUEROA
                                                Florida Bar No. 1002745
                                                afigueroa@gsgpa.com
                                                GELBER SCHACHTER & GREENBERG, P.A.
                                                SunTrust International Center
                                                One Southeast Third Avenue, Suite 2600
                                                Miami, Florida 33131
                                                Telephone: (305) 728-0950
                                                E-service: efilings@gsgpa.com

                                                *Counsel for Defendants*

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ WWW.GSGPA.COM