UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 20-24441-CIV-CANNON/Otazo-Reyes

K3 ENTERPRISES, INC.,

       Plaintiff,

v.

LUBA SASOWSKI, individually,
SASOWSKI WAX HAIR REMOVAL BAR, LTD.,
a Vancouver, BC company,
WAX HAIR REMOVAL BAR, LLC,
a Nevada domestic limited liability company, and
NO. 5 DISTRIBUTING, INC.,
a Nevada domestic corporation,

       Defendants.

_____/

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon Defendants' Motion for Summary Judgment

(the "Motion") [ECF No. 128], filed on April 18, 2022. The Court has reviewed the Motion,

Plaintiff's Response in Opposition [ECF No. 139], Defendants' Reply [ECF No. 151], the parties'

statements of facts [ECF Nos. 129–30, 148, 152],[1] and the full record. Following review, the

Motion is **GRANTED IN PART AND DENIED IN PART**. Plaintiff has established genuine

issues of material fact for all six claims brought by the Second Amended Complaint [ECF No. 99].

---

[1] Plaintiff originally failed to file with its Response a separate statement of material facts
[*see* ECF No. 39]. Pursuant to the Court's Order Requiring Plaintiff's Statement of Material Facts
[ECF No. 145], Plaintiff since has filed a separate opponent's statement of material facts
[ECF No. 129]. That statement of material facts, however, improperly contains some additional
facts, cross references, and legal conclusions [*see* ECF No. 129]. Rather than attempt to Reply to
Plaintiff's statement of material facts, Defendants opted to simply submit a filing in which they
assert that any such attempt would be impossible [ECF No. 152].

CASE NO. 20-24441-CIV-CANNON/Otazo-Reyes

## FACTUAL BACKGROUND[2]

Plaintiff K3 Enterprises, Inc. ("K3") is a Florida company that sells skincare products under the brand name of South Beach Skin Solutions [ECF No. 130 ¶ 1]. K3 was founded in 2005 by William Kercher [ECF No. 148-9 ¶ 7]. In 2010, Defendant Luba Sasowski, a citizen of Canada, contacted Kercher about becoming a reseller of South Beach Skin Solutions products [ECF No. 37-1 p. 27:10–13].

On November 5, 2010, K3 executed the 2010 Distributor Agreement with Defendant Sasowski Wax Hair Removal Bar, Ltd. (the "Canada Wax Bar") [ECF No. 130-1], a company owned by Sasowski [ECF No. 129 ¶ 41; ECF No. 1 p. 4]. The 2010 Distributor Agreement granted the Canada Wax Bar exclusive rights to purchase, inventory, promote, and resell K3's products in British Columbia, Canada [ECF No. 130-1 ¶¶ 1–3]. It also contained a choice-of-law provision in favor of Florida law [ECF No. 130-1 ¶ 24]; a confidentiality clause restricting the Canada Wax Bar's use of K3's confidential information and trade secrets during the term of the agreement and for an additional five years thereafter [ECF No.130-1 ¶ 19]; a trademark clause restricting the Canada Wax Bar from using the name South Beach Skin Solutions or any other trademark or trade name owned by K3 [ECF No. 130-1 ¶ 14]; a non-compete clause barring the promotion or sale of competing goods within the identified territory for a period of two years [ECF No. 130-1 ¶ 4]; and a term provision providing that the Agreement shall be in effect from October 15, 2010, until October 31, 2011, and then remain in effect after October 31, 2011, until terminated by either party [ECF No. 130-1 ¶ 16].

---

[2] The following facts are taken from the parties' Joint Statement of Undisputed Facts [ECF No. 130] and from undisputed filings and evidence in the record.

K3 alleges that, in August 2011, it entered into an oral agreement with the Canada Wax Bar, Sasowski, and Defendant Wax Hair Removal Bar, LLC (the "Nevada Wax Bar") [ECF No. 130 ¶ 5]. According to K3, the 2011 Oral Agreement (1) expanded the exclusive distribution territory established by the 2010 Distributor Agreement to include Nevada and (2) extended the same distribution rights recognized in the 2010 Distributor Agreement to the Nevada Wax Bar and to Sasowski individually [ECF No. 130 ¶ 5; ECF No. 99 ¶ 45].

K3 similarly alleges that, on June 15, 2012, it entered into the 2012 Distribution Agreement with the Canada Wax Bar to expand the exclusive distribution territory to include all of Canada [ECF No. 130 ¶ 6; ECF No. 130-3]. K3 has not produced a signed copy of that 2012 Distribution Agreement [*see* ECF No. 130-3 (unsigned)]. Defendants aver that the parties did not enter into any written agreement expanding the exclusive distribution territory to include all of Canada [ECF No. 129 ¶ 33].

K3 further alleges that, pursuant to subsequent oral agreements, the exclusive distribution territory ultimately was expanded to include the entire world [ECF No. 99 ¶ 45].

In December 2019, Sasowski terminated the 2010 Distribution Agreement pursuant to the 30-day notice provision [ECF No. 130 ¶ 4]. That termination had the effect of ending all of the Defendants' business relationship with K3. Sasowski subsequently founded another company, Defendant No. 5 Distributing, Inc. ("No. 5 Inc."), a Nevada corporation, with Michael "Jake" Kearsley [ECF No. 62 ¶ 6].

Based on Defendants' business activities after December 2019, K3 avers that Sasowski and her entities violated the parties' agreements and competition laws by (1) developing competing products (the Bryght product line) using K3's trade secrets and while still associated with K3, (2) advertising and selling those products after terminating the business relationship with K3, and

(3) using a "promotional/training video" containing references to South Beach Skin Solutions after terminating the business relationship with K3 [ECF No. 99 ¶¶ 9(a)–(b), 28(l), 61–68].  Sasowski worked with Pure Source, a Miami-based company, to develop and manufacture the Bryght product line [ECF No. 37-1 pp. 109:15–110:4; 112:23–113:20].

## PROCEDURAL HISTORY

On July 2, 2020, K3 filed suit against Sasowski and her associated entities in the Eleventh Judicial Circuit in and for Miami County, Florida [ECF No. 1-1 pp. 2–19].  In October 2020, Defendants removed the case to federal court on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332 [ECF No. 1].  Shortly thereafter, the case was reassigned to the undersigned [ECF No. 16].

K3 filed the operative complaint—the Second Amended Complaint (the "SAC")—on December 20, 2021 [ECF No. 99].  The SAC brings the following claims:

- <u>Count I</u> – Breach of Contract (the 2010 Distribution Agreement's Non-Compete Clause)

  o  brought against the Canada Wax Bar;

- <u>Count II</u> – Breach of Contract (the 2010 Distribution Agreement's Confidentiality Clause)

  o  brought against the Canada Wax Bar;

- <u>Count III</u> – Breach of Contract (the 2010 Distribution Agreement's Trademark Clause)

  o  brought against the Canada Wax Bar;

- <u>Count IV</u> – Breach of Contract (the Oral Agreement)

  o  brought against the Canada Wax Bar, Sasowski, and the Nevada Wax Bar;

- <u>Count V</u> – Breach of Contract (the 2012 Distribution Agreement)

  o  brought against the Canada Wax Bar; and

- <u>Count VI</u> – Misappropriation of Trade Secrets in Violation of the Florida Uniform Trade Secrets Act ("FUTSA")

     o brought against the Canada Wax Bar, Sasowski, the Nevada Wax Bar, and No. 5 Inc.

Defendants moved to dismiss the SAC for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [ECF No. 107].  The Court denied that motion, finding all six Counts to be adequately pleaded [ECF No. 124].

Defendants now move for summary judgment on all of K3's claims [ECF No. 128].  The Motion is ripe for adjudication [*see* ECF No. 131 (Response); ECF No. 151 (Reply); ECF No. 167 (Defendants' Notice of Supplemental Authority); ECF No. 171 (K3's Response to the Notice of Supplemental Authority)].

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed R. Civ. P. 56(a).  An issue of fact is "material" if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party.  *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"When considering a motion for summary judgment, including one asserting qualified immunity, 'courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party and when conflicts arise between the facts evidenced by the parties, [they must] credit the nonmoving party's version.'"  *Feliciano v. City of Mia. Beach*, 707 F.3d 1244, 1252

(11th Cir. 2013) (alteration in original) (quoting *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006)).

"For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (internal quotation marks omitted). The nonmoving party must show more than the existence of a "metaphysical doubt" regarding the material facts. *Matsushita*, 475 U.S. at 586. Speculation, conjecture, or conclusory statements from a party cannot create a genuine issue of material fact. *See Glasscox v. City of Argo*, 903 F.3d 1207, 1213 (11th Cir. 2018); *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). The nonmoving party either must point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997). But "[a] mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

## DISCUSSION

As mentioned, Defendants' Motion seeks summary judgment in their favor on all of the claims in the SAC [ECF No. 61].[3] Each claim is discussed below. In light of the significant overlap between K3's claims, this Order uses internal cross-referencing to minimize repetition.

### I.   Breach of the 2010 Distribution Agreement

Counts I through III are claims against the Canada Wax Bar for breach of the 2010 Distribution Agreement [ECF No. 99 ¶¶ 29–44]. K3 contends that the Canada Wax Bar breached

---

[3] In considering Defendants' Motion for Summary Judgment [ECF No. 128], the Court views the evidence and all factual inferences arising from it in the light most favorable to K3.

the 2010 Distribution Agreement in three ways: (1) by selling competing products in violation of the non-compete clause [ECF No. 99 ¶¶ 29–34 (Count I)]; (2) by developing and marketing those products using K3's confidential and trade secret information in violation of the confidentiality clause [ECF No. 99 ¶¶ 35–39 (Count II)]; and (3) by using a promotional/training video that depicted K3's trademark, without K3's permission, after terminating the parties' relationship in violation of the trademark clause [ECF No. 99 ¶¶ 40–44 (Count III)].  K3 further alleges that each of these breaches has caused damages in the form of lost sales, reputational harm, lost business opportunities, and increased expenses to regain diverted customers [ECF No. 99 ¶¶ 34, 39, 44].

"The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages."  *Abbott Lab'ys, Inc. v. Gen. Elec. Cap.*, 765 So. 2d 737, 740 (Fla. Dist. Ct. App. 2000).

Defendants argue that the Canada Wax Bar is entitled to summary judgment on all three of these claims for the following reasons: (1) the non-compete and confidentiality clauses are unenforceable because they lack a legitimate business interest; (2) the confidentiality clause is unenforceable because it has an unreasonable duration; (3) none of the breach of contract claims is supported by evidence of breach; and (4) none of the breach of contract claims is supported by evidence of damages [ECF No. 128 pp. 4–10].  The Court addresses these four arguments in turn.

### A.  Legitimate Business Interest

Under Florida law, "[a]ny restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable."  Fla. Stat. § 542.335(1)(b).  "The term 'legitimate business interest' includes, but is not limited to:" (1) trade secrets; (2) "[v]aluable confidential business or professional information that doesn't otherwise qualify as trade secrets"; (3) "[s]ubstantial relationships with specific prospective or existing customers"; (4) "[customer]

goodwill"; and (5) "[e]xtraordinary or specialized training."  Fla. Stat. § 542.335(1)(b).  A person seeking enforcement of a restrictive covenant bears the burden to prove that the restrictive covenant at issue is reasonably necessary to protect at least one or more legitimate business interests.  Fla. Stat. § 542.335(b)–(c).  "If a person seeking enforcement of a restrictive covenant establishes prima facie that the restraint is reasonably necessary, the person opposing enforcement has the burden of establishing that the contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest or interests."  Fla. Stat. § 542.335(c).

In this case, Defendants argue that the restrictive covenants contained in the 2010 Distribution Agreement—namely, the confidentiality clause and the non-compete clause—are invalid because K3 has not established any legitimate business interest [ECF No. 128 pp. 4–5, 7].  According to Defendants, the only business interest put forward by K3 is an interest in customer relationships, and K3 has failed to establish that interest with sufficient specificity [ECF No. 128 pp. 4–5].

In response, K3 points out that the SAC identifies numerous legitimate business interests beyond customer relationships, including interests in confidential information related to pricing, product design, vendor services, and marketing strategies [ECF No. 148-9 ¶ 27(d); *see* ECF No. 99].  With respect to customer relationships, K3 avers that it delivered to Defendants, as part of discovery, a confidential list containing the names of 387 customers with whom Defendants transacted [ECF No. 139 p. 6; ECF No. 148-9 ¶ 27(d)(viii)].  K3 also provides a sworn affidavit of Kercher, who substantiates the claim that the restrictive covenants at issue were meant to protect K3's interest in prospective customers [*see* ECF No. 139 ¶¶ 22–26 (comparing net sales before and after Defendants allegedly breached the parties' contracts)].  Moreover, emails between

Kercher and Sasowski indicate that the Canada Wax Bar was involved in recruiting new resellers and customers for K3 in Canada [*see, e.g.*, ECF No. 148-5 pp. 228, 251].  Therefore, even though Kercher's affidavit is somewhat conclusory and K3 has not filed on the record the described list of diverted customers, K3 has sufficiently established legitimate business interests for the contractual provisions at issue.  *See Alonso-Llamazares v. Int'l Dermatology Rsch., Inc.*, 339 So. 3d 385, 396 (Fla. Dist. Ct. App. 2022) (finding a legitimate business interest in existing and prospective customers even though they were not specifically identified); *Milner Voice & Data, Inc. v. Tassy*, 377 F. Supp. 2d 1209, 1218 (S.D. Fla. 2005) (finding a legitimate business interest where the defendants were responsible for the plaintiff's client relationships and had access to confidential information regarding those clients).

### B.  Unreasonable Duration

As to whether the restrictive covenants are reasonably necessary for the identified legitimate business interests, Defendants do not challenge the reasonableness of the 2010 Distribution Agreement's two-year, post-term non-compete clause.  *See Balasco v. Gulf Auto Holding, Inc.*, 707 So. 2d 858, 860 (Fla. Dist. Ct. App. 1998) (concluding that a two-year restrictive covenant is acceptable); *PartyLite Gifts, Inc. v. MacMillan*, 895 F. Supp. 2d 1213, 1226 (M.D. Fla. 2012) (collecting cases to show that geographic restrictions, including nationwide restrictions, are reasonable where they track the employer's area of business).  Defendants do, however, challenge the reasonableness of the five-year, post-term confidentiality clause [*see* ECF No. 128 pp. 4–8].

Defendants argue that the 2010 Distribution Agreement's five-year confidentiality clause is presumptively unreasonable under Section 542.335(1)(d)(1) of the Florida Statutes based on its duration.   Fla. Stat. § 542.335(1)(d)(1).   That statutory provision instructs courts to apply a presumption of unreasonableness to post-term restrictive covenants not predicated upon the

protection of trade secrets that are more than two years in duration. *Id.* As K3 points out, however, the confidentiality clause of the 2010 Distribution Agreement is expressly predicated, at least in part, upon the protection of trade secrets [*see* ECF No. 130-1 ¶ 19 ("In the event of termination of this Agreement, there shall be no use or disclosure by [the Canada Wax Bar] of any confidential information of [K3], and [the Canada Wax Bar] shall not manufacture or have manufactured any products, devises, components, or assemblies utilizing [K3's] patents, inventions, copyrights, know-how *or trade secrets*." (emphasis added))]. Section 542.335(1)(e) instructs courts to presume as reasonable any "post[-]term restrictive covenant[] predicated upon the protection of trade secrets" that is five years or less in duration. Fla. Stat. § 542.335(1)(e). Thus, to the extent that the five-year confidentiality clause is predicated upon protecting trade secrets, the Court presumes it is reasonable pursuant to Section 542.335(1)(e). To the extent the five-year confidentiality clause is predicated upon protecting information that does not rise to the level of trade secrets, however, the Court presumes it is unreasonable pursuant to Section 542.335(1)(d)(1). K3 and the Canada Wax Bar do not articulate any arguments that overcome these presumptions.

Accordingly, the confidentiality clause is enforceable only insofar as it pertains to trade secrets.

### C. Evidence of Breach

Defendants also argue that summary judgment is warranted in favor of the Canada Wax Bar on Counts I through III because K3 has not provided any evidence of breach by the Canada Wax Bar in the relevant territory (British Columbia, Canada) [ECF No. 128 pp. 5–6, 8–10]. That argument fails. K3 has submitted evidence that Defendants, acting as a group, developed certain Bryght products using K3's trade secret information and subsequently sold those products in British Columbia [*see* ECF No. 148-9 ¶ 19 (Kercher stating that the Canada Wax Bar sells Bryght

products in British Columbia); ECF No. 148-3 pp. 30–34 (screenshots of advertisements by the "bryghtenup" Instagram account with a location of "Vancouver, British Columbia")].  K3 also has presented evidence of trademark infringement in the form of a written letter dated March 4, 2020, in which Sasowski, on behalf of the Canada Wax Bar, acknowledges the prior use by Defendants of some references to K3 and its products and ensures that Defendants will cooperate in removing any allegedly infringing content from media or communications moving forward [ECF No. 148-7].  Based on this record evidence, K3 has created a genuine issue of fact as to whether the Canada Wax Bar breached the non-compete, confidentiality, and trademark clauses of the 2010 Distribution Agreement [*see* ECF No. 130-1 ¶¶ 4, 14, 19; *see also supra* Discussion I].

### D.  Evidence of Damages

As mentioned, Counts I through III seek damages for lost sales, reputational harm, lost business opportunities, and increased expenses to regain diverted customers [ECF No. 99 ¶¶ 34, 39, 44].  Defendants argue that summary judgment is warranted on all three Counts because K3 has "failed to prove any damages" stemming from any breaches of the 2010 Distribution Agreement, and instead has admitted that damages are "undetermined" at this time [ECF No. 128 pp. 6–7, 9–10].  Defendants' argument on this point is unconvincing.  Kercher acknowledges that the "exact dollar figure" of damages remains unknown, but he does so based on the understanding that the damages "are continuing in nature" [ECF No. 148-9 ¶ 18].  His sworn affidavit goes on state that "numerous customers" bought Bryght products from the Canada Wax Bar after Sasowski terminated the relationship with K3 with the belief that they were continuing to purchase K3 products [ECF No. 148-9 ¶ 19].  Kercher also asserts, more generally, that K3 experienced a noticeable drop in net sales after the Canada Wax Bar breached the 2010 Distribution Agreement and Defendants began to unlawfully compete with K3 [ECF No. 148-9

¶¶ 22–26].  Thus, the Kercher affidavit, though self-serving, is sufficient to create a genuine issue

of fact as to damages.  *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) ("[A] litigant's

self-serving statements based on personal knowledge or observation can defeat summary

judgment.").[4]

For these reasons, none of Defendants' arguments warrants summary judgment on any of

the breach of contract claims tied to the 2010 Distribution Agreement.

**II.      Breach of the 2012 Distribution Agreement**

Count V is a breach of contract claim against the Canada Wax Bar based on the 2012

Distribution Agreement [ECF No. 99 ¶¶ 53–60], which differs from the 2010 Distribution

Agreement only insofar as it expands the exclusive distribution territory to all of Canada and

contains updated term start and end dates [*compare* ECF No. 130-3, *with* ECF No. 130-1].

According to Defendants, Count V fails because the 2012 Distribution Agreement was never

signed by the Canada Wax Bar [ECF No. 128 pp. 15–18].  Defendants argue generally that the

unsigned 2012 Distribution Agreement is unenforceable under Florida's statute of frauds and,

more narrowly, that any restrictive covenants contained therein are unenforceable under Section

---

[4] Defendants also argue that K3's theory of damages, as discussed in the Kercher affidavit, was not sufficiently disclosed pursuant to Rule 26 and therefore warrants summary judgment in their favor on all claims in the SAC [ECF No. 151 pp. 3–4; ECF No. 167].  To the extent there exists a deficiency in Plaintiff's damage-related Rule 26 disclosures, any such deficiency is not, on this record, a reason to grant summary judgment.  Kercher's discussion of damages in the affidavit establishes a genuine issue of material fact and is sufficiently related to the types of damages identified in the SAC (lost sales, reputational harm, lost business opportunities, and increased expenses to regain diverted customers) [ECF No. 99 ¶¶ 34, 39, 44; *see also* ECF No. 171].  Plaintiff has offered limited, albeit generalized, evidence to preclude summary judgment on damages, for the reasons stated above.  And Plaintiff represents that Kercher was available for deposition on the question of damages, but Defendants did not probe that topic or otherwise seek Court resolution of any damage-related deficiency during discovery [ECF No. 159 pp. 4–6].  Nevertheless, the Court is aware of Plaintiff's rather bare showing of damages and will entertain any damage-related arguments, as appropriate, via Defendants' pending Motion in Limine [ECF No. 159 pp. 4–7] and/or under Rule 50 at trial.

542.335(1)(a) of the Florida Statutes [ECF No. 128 pp. 10–13 (citing Fla. Stat. § 542.335(1)(a))]. The Court discusses these two related arguments in turn.

**A.  Statute of Frauds**

Under Florida's statute of frauds, "any agreement that is not to be performed within the space of one year from its making must be reduced to writing in order to be enforceable." *Rubenstein v. Primedica Healthcare, Inc.*, 755 So. 2d 746, 748 (Fla. Dist. Ct. App. 2000)); *see* Fla. Stat. § 725.01.  As discussed in the Order Denying Motion to Dismiss the SAC, the issue in this case is whether the unsigned 2012 Distribution Agreement was sufficiently "reduced to writing" [ECF No. 124 p. 8].  To satisfy the statute of frauds, a plaintiff must produce "some note or memorandum [of the agreement] . . . in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized."  Fla. Stat. § 725.01.  Such notes or memoranda, however, "may take almost any possible form," *Kolski ex rel. Kolski v. Kolski*, 731 So. 2d 169, 171 (Fla. Dist. Ct. App. 1999), as long as they "contain the essential terms of the transaction," *First Guar. Corp. v. Palmer Bank & Tr. Co. of Fort Myers*, 405 So. 2d 186, 188 (Fla. Dist. Ct. App. 1981).  Moreover, multiple writings "may be aggregated to satisfy the statute," provided that at least one of the writings is signed and either "expressly or implicitly refers to the unsigned document[(s)]."  *Palmer Bank*, 405 So. 2d at 188.  "An implied reference may be established by either the fact that the documents relate to the same subject matter or by physical annexation."  *Id.*  Parol evidence also may be used, in certain circumstances, to clarify such writings.  *Id.*

In this case, K3 has produced an unsigned copy of the 2012 Distribution Agreement [ECF No. 130-3] along with a June 14, 2012, email exchange between Sasowski and Kercher [ECF No. 148-5 pp. 117–22, 128–31].  The 2012 Distribution Agreement contains all of the

essential terms of this transaction but lacks a signature [ECF No. 130-3].  The June 14, 2012, email exchange, on the other hand, features: (1) Sasowski assenting to an expansion of the exclusive distribution territory to include all of Canada [ECF No. 148-5 p. 120 ("Yes I would be happy to work the entire Canadian Market for you . . . .")]; (2) Kercher expressly referencing the terms of the unsigned 2012 Distribution Agreement [ECF No. 148-5 p. 117 ("For the sake of formality, I have updated the original agreement with new dates and changed BC to all of Canada for the territory.")]; and (3) Sasowski's email signature as president of the Canada Wax Bar [*see* ECF No. 148-5 pp. 120, 131; *see also* Fla. Stat. § 668.004 ("[A]n electronic signature may be used to sign a writing and shall have the same force and effect as a written signature."); *U.S. Distributors, Inc. v. Block*, No. 09-21635-CIV, 2009 WL 3295099, at *5 (S.D. Fla. Oct. 13, 2009) (recognizing that emails containing the electronic signatures of the parties or their agents satisfied Florida's statute of frauds); *Rouse v. Nationstar Mortg., LLC*, No. 8:14-CV-497-T-30AEP, 2014 WL 1365420, at *2 (M.D. Fla. Apr. 7, 2014) (same)].  Critically, because the signed June 14, 2012, emails relate to the same subject as the 2012 Distribution Agreement and expressly refer thereto, they may be considered alongside the unsigned 2012 Distribution Agreement for purposes of the statute of frauds.

On this record, Defendants have not shown that Count V is barred by the statute of frauds. Rather, the statute of frauds may be satisfied based on how the factfinder resolves the numerous genuine issues of material fact surrounding the 2012 Distribution Agreement (e.g., whether an enforceable contract was created and, if so, what terms were included therein).  *See Pereida v. Wilkinson*, 141 S. Ct. 754, 765 (2021) ("It is 'generally a question of fact for the jury whether or not a contract . . . actually exists." (quoting 11 R. Lord, Williston on Contracts § 30:3, pp. 37–39 (4th ed. 2012))); *Lockheed Martin Corp. v. Galaxis USA, Ltd.*, 222 F. Supp. 2d 1315, 1323 (M.D.

Fla. 2002), *aff'd sub nom. Lockheed Martin Corp. v. Galaxis U.S.A. Ltd.*, 88 F. App'x 389 (11th Cir. 2003) ("[T]he existence of a contract is a question of fact to be determined by consideration of all the facts and circumstances."); *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1033 n.8 (5th Cir. 1982) (citing cases to support the proposition that "questions of material fact concerning the [Florida] Statute of Frauds are for the trier of fact").

**B. Section 542.335(1)(a)**

In a similar vein as the statute of frauds, Section 542.335(1)(a) states that courts "shall not enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom enforcement is sought." Fla. Stat. § 542.335(1)(a). That language is substantially similar to the language of the statute of frauds' signed-writing requirement, which requires certain writings to be "signed by the party to be charged therewith." Fla Stat. § 725.01. Though the Florida case law establishing a broad understanding of "signed writings" does so in the context of the statute of frauds, Defendants have not presented the Court with any authority that suggests that the signed-writing requirement of Section 542.335(1)(a) should be understood or applied any differently [*see* ECF No. 151 pp. 7–8 (discussing the signed-writing requirements of the statute of frauds and Section 542.335(1)(a) without differentiation)]. Moreover, the Canada Wax Bar agreed in a signed writing to an expansion of the exclusive distribution territory to include all of Canada [*see* ECF No. 148-5 p. 120] and did so with knowledge that the exclusive distribution territory was incorporated into the parties' pre-existing non-compete clause [*see* ECF No. 130-1 ¶ 4]. For these reasons, Defendants have not shown that Count V is disallowed by Section 542.335(1)(a).

More fundamentally, as discussed above, *see supra* Discussion I(C)–II(A), K3 has presented genuine issues of material fact as to whether K3 and the Canada Wax Bar entered into

an enforceable contract in 2012 that incorporated the non-compete, confidentiality, and trademark clauses of the written Distribution Agreements [ECF Nos. 130-1, 130-3] and whether the Canada Wax Bar breached those clauses.[5]  Accordingly, summary judgment is not warranted on Count V.

## III.   Breach of Oral Contract

Count IV is a breach of contract claim brought against the Canada Wax Bar, the Nevada Wax Bar, and Sasowski individually based on the 2011 Oral Agreement [ECF No. 99 ¶¶ 45–52]. As discussed, K3 maintains that, in August 2011, the foregoing parties entered into an Oral Agreement to add the Nevada Wax Bar and Sasowski to the distribution relationship under the same terms as the Canada Wax Bar and to expand the exclusive distribution territory to include Nevada (the "Nevada Expansion") [ECF No. 99 ¶¶ 45–48].  K3 further maintains that, at some later point, the parties modified the 2011 Oral Agreement to make the exclusive distribution territory encompass the entire world (the "Global Expansion") [*see* ECF No. 99 ¶ 45].  K3 contends that Defendants breached the 2011 Oral Agreement by violating the incorporated non-compete, confidentiality, and trademark clauses [ECF No. 99 ¶¶ 49–51]. Defendants level the same two signed-writing challenges against Count IV that they level against Count V (i.e., the breach of contract claim is barred in full by the statute of frauds and disallowed to the extent it seeks to enforce any restrictive covenant by Section 542.335(1)(a)) [ECF No. 128 pp. 10–15].[6]  These

---

[5] The Motion includes an argument that Count V is time-barred under the statute of limitations, because there is "no evidence" that the parties agreed to automatic renewals [ECF No. 128 p. 17]. But because a reasonable jury could conclude that, through the June 14, 2012 emails, the Canada Wax Bar agreed to expand the exclusive distribution territory to all of Canada but to be bound by the same automatic renewal provision used in the 2010 Distribution Agreement [ECF No. 130-1 ¶ 16; *see also* ECF No. 130-3 ¶ 16], this argument does not warrant summary judgment in favor of the Canada Wax Bar [*see also* ECF No. 124 p. 6].

[6] Defendants also repeat their statute of limitations argument in connection with Count IV [*see* ECF No. 128 p. 13].  Because a reasonable jury could find, based on the parties' writings and relationship, that the 2011 Oral Agreement incorporated the automatic renewal provision first used

arguments fail with respect to the alleged August 2011 Nevada Expansion but succeed with respect to the alleged subsequent Global Expansion.  Thus, Count IV survives summary judgment in part.

### A.  The August 2011 Nevada Expansion

K3 has produced sufficient evidence to overcome Defendants' arguments at this stage with respect to the Nevada Expansion.  As with the unsigned 2012 Distribution Agreement, the signed writing produced by K3 in connection with the 2011 Oral Agreement takes the form of an email exchange between Sasowski and Kercher.  In that email exchange, dated August 4, 2011, Sasowski asks Kercher to "consider having us distribute [K3's] line in NV as well" [ECF No. 148-8 p. 21].  Kercher responds that he "would be thrilled to have you be our official rep and distributor for NV" [ECF No. 148-8 p. 20].  In reply, Sasowski thanks Kercher for the opportunity and expresses optimism about building the K3 brand in Nevada "faster than [in] Canada" [ECF No. 148-8 p. 20; *see also* ECF No. 37-1 p. 62 (Sasowski confirming during a deposition that, at some point, she became the exclusive distributor in Nevada)].  Because the August 4, 2011, emails relate to the same subject matter as the Distribution Agreements, they may be considered alongside those Agreements for signed-writing requirement purposes.  Against this backdrop, Defendants have not established that they are entitled to summary judgment with respect to the Nevada Expansion based on Florida's statute of frauds and Section 542.335(1)(a).

As discussed, the factfinder ultimately will need to resolve the genuine issues of material fact pertaining to the existence of all of the alleged contracts in this case.  *See supra* Discussion II(A)–(B).  For Count IV specifically, the factfinder will need to determine the extent of the relationships among Defendants and the capacity in which Sasowski signed her August 4, 2011,

---

in the 2010 Distribution Agreement [ECF No. 130-1 ¶ 16], this argument is not dispositive on summary judgment. *See supra* n.5.

emails (and therefore which, if any, Defendants among the Canada Wax Bar, the Nevada Wax, and Sasowski "signed" the August 4, 2011, emails for purposes of establishing a contract). But, for now, there is sufficient evidence of an enforceable contract (that satisfies the relevant signed-writing requirements), a contractual breach, and damages related to the Nevada expansion to withstand Defendants' motion for summary judgment [*see* ECF No. 148-4 pp. 20–21 (the August 4, 2011, emails discussing adding Nevada to the exclusive distribution territory); ECF No. 148-2 pp. 12–13 (evidence indicating that Bryght products are sold in Nevada); ECF No. 148-9 ¶ 19 (Kercher claiming, in a sworn affidavit, that numerous customers purchased Bryght products from the Nevada Wax Bar with the belief that they were continuing to purchase K3 products)].

### B. The Post-2011 Global Expansion

Insofar as Count IV is based on an alleged modification of the 2011 Oral Agreement to encompass the entire world, however, summary judgment in favor of Defendants is warranted. K3 has not produced any signed writing in which any Defendant agrees to expand the exclusive distribution territory to include the entire world. Because the exclusive distribution territory is an essential term of this transaction, K3 cannot satisfy the statute of frauds without such a writing. Moreover, because the exclusive distribution territory is incorporated into the relevant restrictive covenant (the non-compete clause) [ECF No. 130-1 ¶ 4], K3 likewise cannot satisfy Section 542.335(1)(a) without such a writing.

Accordingly, the evidence produced by K3 is sufficient to defeat summary judgment on Count IV with respect to the alleged Nevada Expansion, but not with respect to the alleged Global Expansion.

## IV.    FUTSA

Count VI is K3's lone claim not based on any alleged breach of contract.  Instead, Count VI is brought under the FUTSA against all four Defendants [ECF No. 99 ¶¶ 61–80].  To prevail on a claim under the FUTSA, a plaintiff must show that: (1) it possessed a "trade secret," and (2) the secret was "misappropriated."  *Yellowfin Yachts, Inc. v. Barker Boatworks*, *LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018) (quoting *Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, 678 F. App'x 839, 853 (11th Cir. 2017)).  The FUTSA defines a "trade secret" as "information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) [d]erives independent economic value . . . from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Fla. Stat. § 688.002(4).  "Misappropriation," on the other hand, is defined as the disclosure, use, or acquisition of a trade secret of another by someone who knows or has reason to know that the trade secret was acquired by improper means.  Fla. Stat. § 688.002(2).  Lastly, "improper means" is understood by the statute to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, [and] espionage."  Fla. Stat. § 688.002(1).

In this case, K3 asserts that each of the Defendants misappropriated trade secrets by using K3's "formulas, ideas, know how, customer lists[,] marketing materials" and "unique training methods," despite knowing that the information was acquired through the improper means of breaching the confidentiality clause of the agreement(s) with K3 [ECF No. 99 ¶¶ 61–80; ECF No. 139 pp. 6–7].  As discussed, K3 has presented evidence that Defendants used K3's processes to develop and market a virtually identical product [*see* ECF No. 148-9 ¶¶ 27(aa), (ee)–(gg)] and also used K3's customer lists to sell that product [*see* ECF No. 148-9 ¶ 19].  K3

19

also has presented evidence that the information used by Defendants derived independent economic value from being kept secret and that reasonable efforts were taken to maintain that secrecy [*see, e.g.*,   ECF No. 130-1 ¶ 19 (confidentiality clause of the 2010 Distribution Agreement); ECF No. 130-3 ¶ 19 (confidentiality clause of the unsigned 2012 Distribution Agreement); ECF No. 148-5 pp. 100–01 (an email from Kercher to Sasowski discussing how to market the types of products at issue and containing a notice of confidentiality after the signature); ECF No. 148-5 pp. 117–18 (an email from Kercher to Sasowski discussing pricing guidelines for the types of products at issue and containing the same notice of confidentiality);  ECF No. 148-5 pp. 119–20 (an email from Kercher to Sasowski discussing product details and containing the same notice of confidentiality)]. Although K3's evidence is limited, it amounts to more than "a mere scintilla of evidence" and raises genuine issues of fact to be resolved by the factfinder. *See Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004); *see also Digiport, Inc. v. Foram Dev. BFC, LLC*, 314 So. 3d 550, 553 (Fla. Dist. Ct. App. 2020) (finding there to be an issue of fact precluding summary judgment as to whether the subject information constituted trade secrets); *Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1287 (S.D. Fla. 2010) (finding there to be a fact question as to whether reasonable steps were taken to preserve trade secrets where the plaintiffs had the defendant sign a non-disclosure agreement and instructed defendant not to disclose the information).

K3 has presented sufficient evidence to overcome Defendants' motion for summary judgment with respect to Count VI.

CASE NO. 20-24441-CIV-CANNON/Otazo-Reyes

## CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment [ECF No. 128] is **GRANTED IN PART AND DENIED IN PART**.

2. The parties shall proceed to trial on all six Counts in Second Amended Complaint [ECF No. 99] as narrowed by this Order.

    a. Insofar as Count IV is based on an alleged agreement to expand the exclusive distribution territory to cover the entire world, it is barred by Florida's Statute of Frauds and Section 542.335(1)(a).

    b. Insofar as the confidentiality clauses underlying Counts II, IV, and V are predicated upon the protection of information that does not constitute trade secrets, they are unenforceable.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida this 7th day of August 2022.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record